May it please the Court, my name is Soren Rotman and I represent the petitioner Enrique Cuevas-Gaspar. The decision of the Board of Immigration Appeals is contrary to its own precedent. The opinion makes a generalized finding that a residential burglary under the Washington statute is inherently a crime involving moral turpitude because of the peculiar dangers that may be involved in the offense. However, in matter of M, a board decision that is directly on point and that recently has been cited to by the District Court and Longby INS, the Board held that this burglary offense does not inherently or in essence involve moral turpitude. Instead, the determinative factor is whether the crime intended to be committed at the time of the burglary itself involves moral turpitude. Repeat that last statement. Yes, Your Honor. The determinative factor is not the burglary itself but the crime that was intended to accompany the entry, the breaking and entry, and whether that accompanying crime itself involves moral turpitude. Give me an example of a breaking and entering crime that does not involve moral turpitude. I'd be happy to. For example, this Court has held that the offense of malicious mischief in Washington, although a C felony here, does not involve moral turpitude. So say a person in a fit of rage breaks into his parents' or his girlfriend's home and grabs the family portrait and smashes it against the ground. That person would have committed ostensibly the offense of residential burglary, but should that person now be subject to deportation proceedings because of that offense? I agree with our cases that say that burglary is a crime of moral turpitude. Excuse me, Your Honor. What do you do with our cases starting as early as 1935 which say that residential burglary is a crime of moral turpitude? Those cases and the cases of the Board all link burglary with the specific intent or the element to commit theft or larceny. They do not say that. The cases say that residential burglary is a crime of moral turpitude, period. The 1935 case doesn't say it's larcenous at all, for example. I'm not aware of a precedent decision from this Court or the Board that says that, and that is the issue in this case is that there is this Board case, matter of M, and although it's from 1946, the district court here has cited to that as good law, and, in fact, Respondent does not contest that this remains good law. And the reason for this is that there may be nothing inherently immoral, base, vile, or depraved in simply breaking and entering. So here the statute. Sure there is. You're intending to put people in extraordinary danger. You're setting up a terrible situation. We even think it's an aggravated felony, typically. The issue is, beyond that, what do you do with the facts of this case? As regards? As regards the fact that it was larcenous. Well. To put it another way, that gets to, I think, the second part of the inquiry. Even assuming you're correct that this is not, you know, doesn't meet the categorical approach, what about the Taylor modified categorical approach I just approved the other day by Anne Shepard? Right. How does this case not fit under that approach? Well, the case may very well fit under that rule if it went back to the board. But here the board did not consider the record of conviction at all. It merely, in a sweeping manner, said that burglary, residential burglary in Washington, is always a crime involved in moral turpitude. I thought it, let me see, I thought it went under both the categorical and the modified categorical. No, the board? I don't believe so, Your Honor. The board decision does not at all refer to the record of conviction. And although the immigration judge did so, the board did not uphold him on that point. So the fact of the matter is that this court reviews only the final administrative decision, and that is the board's decision. And here that decision was made both without regard to the record of conviction and without regard to its own binding precedent. What about the rule that normally we can affirm on any ground supported by the record? Well, I believe that that rule does not apply here because this Court on this petition is reviewing the final agency decision. The record is the BIA decision, you're saying? Yes. I would like to move on and state that even if this Court were to find that the statute does inherently involve moral turpitude, the petition should still be granted because the board erred in denying Mr. Cuevas of his only opportunity to apply for relief from removal. In L'Ipiguitron B.I.N.S., this Court held that a permanent residence period of lawful and relinquished domicile should be imputed to his or her children for purposes of the child's eligibility for relief under Section 212C. The cancellation provision of Section 248A replaced Section 212C waiver and is now the sole form of relief available to a lawful permanent resident. As such, the factors analyzed in the Court's decision in L'Ipiguitron in the context of the old 212C section directly informed those at issue here. Now, in Castillo-Felix B.I.N.S., this Court held that to be eligible for 212C, noncitizens have to accumulate seven years of lawful, unrelinquished domicile after their admission for permanent residence. Thus, under the law of the circuit, a domicile is not considered lawful until after admission for permanent residence. In L'Ipiguitron, however, this Court distinguished that rule on the basis of several crucial differences. One difference is that L'Ipiguitron involved a petitioner who was brought to this country as a child, just like in this case where Mr. Cuevas was one year old when his parents brought him to the United States. And according to the Court, the fundamental policy animating this section was as a just and humane goal of providing relief to those for whom deportation would result in a peculiar and unusual hardship. The Court stated that to ignore a parent's lawful domicile in determining that of the child would directly frustrate the policy of this Section 212C. Well, let's assume it does frustrate a policy. How do you still deal with the plain language of the statute? The plain language of the statute, although the words used are different, the provisions are not dissimilar. L'Ipiguitron relied on the fact that the statute uses a person's lawful, unrelinquished domicile. But in this circuit, what that meant is that a person had to be a permanent resident to have lawful, unrelinquished domicile. Now the statute says you are eligible for cancellation if you have five years. So, in effect, it's less than what it used to be. But now there's an additional requirement of two years after having been lawfully admitted in some status. So the difference really is not that great. Well, just a minute now. Under the former provision about domicile, I agree with you. The cases seem to say you have to be a lawful resident, right? A permanent resident, right? Well, the case... Our older cases say to meet the domicile requirement, you have to be a permanent resident. Yes, Your Honor. Now, are you saying that to be a permanent resident, the person had to be admitted as a resident? Right. A person to be admitted as a resident under the old statute, that meant admitted as a permanent resident. In other words, the old domicile concept included admission to permanent residency as one of its elements. Right. And under the current provision, the requirement is even lesser because it requires only five years after admission as a permanent resident. The other... Just a minute. So then, in effect, our older case under the former statute, in effect, imputed the lawful admission to permanent residency to the child? Yes. From the parent. That is the holding of L'Epiguitron. And just as in L'Epiguitron, the period of lawful, unrelinquished domicile was imputed to a child, so should the parent's continuous residence be imputed to a child here. The term status is not really defined in the Act, but its common legal meaning is one of standing, state, or condition. And both Congress and the courts have recognized the particular vulnerability of children in the immigration context. Did you want to save a minute for rebuttal? Sure. I'll be happy to save a minute. Thank you, Your Honor. It's entirely up to you. May it please the Court. We have two issues in this case. One is the removability of... Hold on. There you go. I've got the clock going. Oh, I'm sorry. May it please the Court. We have two issues in this case. One is the question of whether the crime of which the petitioner was convicted renders him subject to removal. And the second issue is his eligibility for cancellation of removal. I'd like to address the latter issue first and emphasize that the statute, the cancellation of removal statute, was enacted to authorize the Attorney General to forgive the immigration consequences of criminal conduct in specific cases where precise statutory criteria are met. And the statute refers specifically to the admission of the applicant. Admission is something that is individual to a person, unlike domicile in the Lepe-Guitron case, which... Well, but what about his argument that domicile, in fact, required admission because you had to be a permanent resident to get domiciled? Well, the law requires or the law required, excuse me... But that was our case law, right? It was. The statute said you had to be returning to a lawful, unrelinquished domicile of seven years. And the way we interpreted that domicile, we interpreted that to mean you had to be a legal permanent resident to have domicile, which means you had to have been admitted. In other words, that was a necessary element of domicile, right? Admission to permanent residency. On that understanding of the case, Your Honor, I'd agree with you. And how do you distinguish that case from this case? Well, the Congress selected a different word. Domicile was taxed in that case because the alien petitioner could not have established the intendant as a child. But here, irrespective of age, admission is something that's individual to the person. The Attorney General simply correctly found that he simply doesn't possess the authority to grant the relief that's sought here. If a petitioner wishes to have his removability canceled, if he wants the immigration consequences of his crimes lifted, he's got to seek relief through some other means via, like, a private bill or some other form. Well, you know, I assume Congress had some purpose in mind in changing the statute, right? It did. But the question is, you know, whether they chose the right words and had the right effect. In view of our case law that says domicile includes admission to permanent residency. Well, Your Honor, they had been, in that case, the people had, in fact, been lawfully admitted to this country, correct? The people meaning the mother. Yes. In that case. And let me re-thrown. And that residency was attributed to? They were actual legal immigrants. Right. And that was attributed to the child. Well, Your Honor, I guess the way that I would address it is that the cancellation of removal was not a slight revision of 212C and its concepts. It was a wholesale rewriting. As Petitioner's Counsel acknowledged, there are different requirements now. And the case law applying 212C really has very limited relevance anymore. I mean, the 212C originated as a narrow form of relief for aliens who are not subject to deportation if they remain in the United States, but if they leave and then try to come back in, they would be excluded. And 212C was created to relieve that hardship. And through court decisions, it was extended into something that went far beyond the statutory terms. In enacting the Illegal Immigration and Reform Act in 1996, Congress revised and very specifically stated statutory requirements that had to be met, applying it to all deportees. And so we have cases of removal proceedings on terms that are different from the way that courts had extended it to deportation proceedings before the Illegal Immigration and Reform Act. So really the lepidotron has been superseded by statute. That's the one-line answer to the argument. The other issue in this case is whether Petitioner is removable as having committed a crime involving a moral turpitude. And one of the questions the Court had was whether the agency is here engaged in the modified categorical analysis or whether its decision rests solely on a categorical analysis. And the Board decision on page 3 of the record affirmed the immigration judge's ruling. It's not precisely clear what that means. Well, but, you know, after you know, I thought frankly I was under the impression that the Board had engaged in the modified categorical analysis. But looking at it, I don't see it in here. I mean, nowhere they discuss the categorical approach, right, of Taylor. They cite Taylor, and they don't say anything about the modified approach, although I know you discuss it in your brief. So I don't think we can review that, you know, under the SEC v. Shane Rehul, right? We can only decide it on the same basis that the Board did. But it depends on exactly what the Board did here, Your Honor. I mean, when you read the decision ---- There's not a word in here. Now that I look at it more carefully, about the modified categorical approach, is there? I'm sorry? They say there's not a word in the Board decision that would make you think they applied the modified approach. That's correct, Your Honor. The Board decision does not expressly refer to the modified categorical approach or discuss the underlying plea agreement or anything like that. However, I mean, the case comes to the Board in the context of an appeal raising specific issues. And the Board decision is written in that manner. It says these are the issues presented. The appeal is dismissed. And the appeal is an appeal of the immigration judge's decision. I've seen lots of briefs from the OIL that says when the Board renders a reasoned decision, we can't review the decision of the I.J. Well, it's up to the extent that it adopts the I.J.'s decision. And it's not clear to me, Your Honor, whether affirming the immigration judge's ruling is sufficient language to sweep the I.J.'s rationale into the Board decision. What's the language in the Board's opinion that you would point to that you think gives the best shot at incorporating what the I.J. says? There's customarily a reference to a precedent decision called matter of Bourbono that says we adopt and affirm the immigration judge's decision. And where is that in here? Well, it's not in here, Your Honor. Probably. In any event, the Court need not proceed to the modify and categorical approach in this case because categorically, residential burglary under Washington law is a crime involving moral turpitude. The Board said that crime involves moral turpitude if the conduct is inherently base, vile, or depraved, contrary to the generally accepted rules of morality. And the Board went on and explained that, as this Court has recognized, that there are peculiar dangers inherent in residential burglaries. And that is a basis for the Court, for the Board to say that residential burglaries are a violation of sort of the norms. What about Mr. Rotman's example of, you know, somebody breaking in to do malicious mischief? Well, Your Honor, I guess that the example... Chop up the family portrait. The example that he gave is kind of difficult to assess on the facts because the breaking has to occur with a specific intent to commit a felony. And... Well, that's a felony, malicious mischief. Right. No, the question is, did, under the circumstances where this person was breaking in in a fit of rage, had he intended to go in specifically to commit an act of malicious mischief? Or was it, you know, something that just kind of occurred to him once he broke in? Well, Your Honor, no. Without getting into the specifics of what an individual person might have done, the statute accommodates that kind of conduct as being burglary. In other words, breaking in for the purpose of doing malicious mischief. Or for that matter, for instance, suppose somebody, you know, broke into an attached garage to smoke a marijuana cigarette. Is that, is that, is that involves a moral turpitude or whatever is required? Well, I'll assume for purposes of the question that that falls within the concept of a dwelling. A burglary. Under Washington law, an attached garage would be considered part of a dwelling. The answer is that, as the Board indicated and as this Court's precedents have indicated, residential burglaries really are different from other kinds of burglaries. And the citations to, I see my time is up. May I take a moment to conclude? You may respond to Justice Schema. Thank you. Your Honor, residential burglary stands differently from other forms of burglary. And the cases cited by the Petitioner are not really on point with this statute that are, that's limited to dwellings. For the reasons stated in argument this morning and in the answering brief, we ask the Petitioner for review tonight. Thank you very much. Now, as to relief, just as a minor exercises no control over where he or she is lawfully domiciled, a minor likewise does not have any control over whether his or her parent brings him to the United States, whether that entry is done in a lawful manner or not, and whether that parent later files and pursues an application. Congress recognizes that children are not usually responsible for their unlawful status in this country. Section 212A9B3 of the Act, 8 U.S.C. 1182, provides that no period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence. The Act also provides other forms such as a waiver of admissibility for certain immigrants who have assisted their children to enter the country unlawfully. This and other sections is evidence of Congress's protective treatment of children in the immigration laws. And this is a case where the little reading of the statute produces a result demonstrably at odds with the intentions of its drafters. I see that my time is up. Thank you. I'm sorry about that, but we have to keep on schedule today. Thank you. Thank you very much for the excellent arguments on both sides. Cuevas Gaspar v. Ashcroft, soon to be Gonzalez in our caption, is submitted. Thank you.
judges: Fernandez, Tashima, Gould